UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MARY WORDEN, | ) | CIV. 10-4118-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING IN PART AND |
| vs. | ) | DENYING IN PART DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| INTERBAKE FOODS, LLC, | ) | JUDGMENT |
| | ) | |
| Defendant. | ) | |

Plaintiff, Mary Worden, filed suit against defendant, Interbake Foods, LLC, for alleged violations of the Age Discrimination in Employment Act (ADEA) and Title VII. Specifically, Worden alleges age discrimination under the ADEA, age-based hostile work environment, associational discrimination, and retaliation based on her association with minority employees and her age. Interbake moves for summary judgment on all claims. For the following reasons, Interbake's motion is denied with respect to Worden's claims of age discrimination, hostile work environment, and retaliation. Interbake's motion is granted with respect to Worden's associational discrimination claim.

**BACKGROUND**

Viewed in the light most favorable to the nonmoving party, Worden, the facts are as follows:

Worden was employed by Interbake from August of 1994 until March of 2009. She began working as a scheduler in 2003 and remained in that position

until her termination in 2009, with the exception of a short period of time in 2007 when she acted as a production employee.

As a scheduler, Worden was responsible for drafting the daily work schedule, including overtime designations. Once the schedule was completed, Worden would post the schedule at various locations in Interbake's facility. Employees were responsible for checking the schedule to determine their work hours for a given day. Employees would be sent home for the day if they were more than one hour late for a scheduled shift. Schedulers were not supposed to call any individual to notify or remind them of their scheduled hours. Docket 29 at 3.

In September of 2008, Lewis Gaiani became Worden's immediate supervisor and remained as such until Worden's termination. As Worden's supervisor, Gaiani had constant interactions with Worden, engaging in conversations regarding "everything." Docket 29 at 6.

Worden was born in 1955. Worden believes that Gaiani[1] became aware of Worden's age during the summer of 2008 when she had her grandchildren with her at work. Once Gaiani became Worden's supervisor, Worden alleges that he made remarks relating to her age on a daily basis. Worden claims that she objected to these remarks frequently. Additionally, Worden alleges that Gaiani made several race-related remarks about other employees in the presence of

---

[1] Gaiani was born in 1960.

2

Worden, and again she voiced objections. She claims that this conduct began soon after Gaiani became her immediate supervisor and continued until the day she was terminated. Worden asserts that she attempted to report Gaiani's remarks to Dennis Kumbalick and Tiffani Stegemann on separate occasions.[2] Docket 35-4 at 39. Gaiani denies making either age- or race-related comments to Worden.

In December of 2008, Gaiani and Tiffani Stegemann,[3] the Human Resources Manager at Interbake, made the decision to place Worden on a Performance Track Plan (PTP). Interbake's disciplinary policy is to put employees on a PTP following serious or repeated violations of company policy. A PTP typically lasts for a designated time period, during which regular reviews of the employee are conducted. If performance concerns continue, the employee can be terminated at any time during the PTP. Interbake claims that the decision to place Worden on a PTP stemmed from a number of complaints regarding Worden's poor communication skills, her behavior toward coworkers, and scheduling errors. Docket 29 at 7. Worden denies these assertions and instead alleges that placement on the PTP was because of the people she associated with and her objections to numerous age- and race-related comments made by

---

[2] In her deposition testimony, Worden states that she told Kumbalick that she was scared for her job as a result of Gaiani's comments. Docket 35-4 at 39.

[3] Stegemann was born in 1968.

Gaiani. Docket 35-2 at 6. Worden remained on the PTP up to the day she was terminated.[4]

The event that ultimately led to Worden's termination occurred on February 20, 2009. While working as the scheduler, Worden made a phone call to an employee, Sarah Wilch, shortly after 11 a.m., asking her to come in to work. Following Wilch's arrival at work, an investigation took place to determine the circumstances surrounding the scheduling for that day, particularly when Wilch was scheduled.[5] Interbake alleges that the investigation resulted in the findings that Wilch was scheduled to work at 11 a.m., that Worden violated policy by calling Wilch and then allowing her to remain at work after arriving over one hour late, that Worden violated company policy by altering the schedule, and that Worden lied about her conduct. Docket 29 at 8-10. Worden objected to, and continues to object to, these findings other than the fact that she called Wilch. She claims that her reason for calling Wilch was to have Wilch come in early because another worker had taken time off for the day.[6] Docket 35-2 at 7.

---

[4] Because of her placement on the PTP, Worden did not receive her annual raise pursuant to standard policy. Docket 35-4 at 68-69.

[5] Gaiani was one of the members involved in the investigation.

[6] Worden claims that Wilch was scheduled to work at 3 p.m. on the day of February 20, 2009. Docket 35-2 at 7. The parties have not produced the schedule or any copies thereof.

Worden was terminated by Interbake on March 2, 2009. She was replaced by Colleen Mackling[7] on March 3, 2009.

Following her termination, Worden dually filed a charge of discrimination with the South Dakota Division of Human Rights (SDDHR) and the Equal Employment Opportunity Commission (EEOC) on August 4, 2009. On June 17, 2010, the EEOC issued a dismissal and notice of rights. Worden then filed this suit alleging age discrimination under the ADEA, hostile work environment, associational discrimination under Title VII, and retaliation under the ADEA and Title VII.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

---

[7] Mackling was born in 1959.

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules[.]" *Celotex Corp.*, 477 U.S. at 327. Since summary judgment is a useful pretrial tool in all civil cases, including ones alleging discrimination, summary judgment motions involving discrimination are treated no differently than summary judgment motions involving "other ultimate questions of fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

## DISCUSSION

### I.     Exhaustion of Administrative Remedies

A plaintiff must exhaust administrative remedies before bringing suit in federal court under both the ADEA and Title VII. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("An exhaustion of administrative remedies is a condition precedent to the filing of an action under the ADEA in federal court."); *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) ("A Title VII plaintiff must exhaust administrative remedies before bringing suit in federal court.").

Pursuing administrative remedies gives the EEOC the opportunity to investigate claims of employment discrimination and to work toward voluntary compliance and conciliation. *Parisi*, 400 F.3d at 585. Once administrative remedies are exhausted, the plaintiff can bring his or her "employment-discrimination claim, along with allegations that are like or reasonably related to that claim." *Id.* at 585 (citation omitted). "The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Id.*

Interbake argues that Worden failed to exhaust her administrative remedies with respect to all claims that stem from any event other than Worden's termination.[8] Docket 28 at 18-20. Interbake says that "Plaintiff's administrative charge only cites her termination as the adverse employment action for which she sought redress." *Id.* at 19. Interbake then argues that because of this, Worden cannot bring a suit based on any other adverse action. *Id.* Even if Worden's charge refers to her termination as the only adverse action

---

[8] The parties' briefs relating to this motion for summary judgment differ in what documents they contend are considered when determining the administrative charge. Worden uses the formal EEOC Charge of Discrimination as well as the initial SDDHR Charging Party Intake Form, while Interbake relies solely on the formal EEOC Charge of Discrimination. Docket 28; Docket 35-1. The Eighth Circuit has held that an initial complaint interview form that includes the language "THIS IS NOT A COMPLAINT FORM" is not part of the administrative complaint or charge. *Russell v. TG Missouri Corp.*, 340 F.3d 735, 747 (8th Cir. 2003). Because the Intake Form includes the language "This form is not a formal charge of discrimination," this court will not consider the contents of the Intake Form in determining whether Worden exhausted her administrative remedies. Docket 1-1 at 6.

taken against her, Interbake's argument misses the point. The administrative charge serves as the gatekeeper for later claims, not the specific acts that form the basis for those claims. *See Parisi*, 400 F.3d at 585 ("The *claims* of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.") (emphasis added). The language in the administrative charge does not directly limit the specific acts that can form the basis of later claims. The charge gives the EEOC notice of what *type* of activity should be investigated; it does not limit the acts that the EEOC is allowed to investigate.[9]

Worden exhausted her administrative remedies with respect to her claims of age discrimination, hostile work environment, and retaliation based on her association with minority employees and her age. Worden's administrative charge states that she was "terminated because of [her] age and because [she] engaged in protected activity." Docket 35-4 at 10. The charge also states that Worden was "discriminated against on the basis of [her] age . . . and retaliated

---

[9] This does not mean that a plaintiff can avoid the requirement that the charge be filed within 180/300 days of the alleged unlawful practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109-112 (2002). The limitation period begins running upon the happening of a "discrete event" and the litigant must file an administrative charge within 180/300 days. *Id.* But once an administrative charge is filed, the EEOC is not limited to investigating *only* the specific events and actions that are explicitly laid out in the charge. *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 93 (1984) ("[T]he notice of charge does not define the permissible scope of an EEOC investigation."). Interbake's argument attempts to have the administrative charge limit the events and actions that can form the basis for legal claims. If this were the case, the EEOC's investigatory capabilities would be severely limited.

against in violation of the Civil Rights Act of 1964." *Id.* at 9. Furthermore, Worden properly checked the "RETALIATION" box and stated, "There were many racially discriminatory actions and statements from Mr. Gaiani and when he commented that all Mexicans, Blacks, and Asians should be sent back to their own country I told him he was wrong. When other employees came to the office and complained about discrimination I apologized and directed them to Human Resources." Docket, Ex. A, pg. 3. Therefore, Worden's age discrimination claim under the ADEA and her retaliation claims under the ADEA and Title VII were within the scope of the EEOC investigation.

     Additionally, the administrative charge states that Interbake has an "established pattern of terminating employees over 50" and that Worden's supervisor "repeatedly made age based comments." *Id.* at 10. As noted above, Worden's claims "may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Parisi*, 400 F.3d at 585. A hostile work environment claim is "based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. Thus, the administrative charge successfully put Worden's hostile work environment claim within the scope of the EEOC's investigation by using language such as "pattern of terminating employees over 50" and "repeatedly" making discriminatory remarks. *C.f. Robinson v. Napolitano*, No. CIV. 08-4084-KES, 2010 WL 358469 (D.S.D. 2010) (finding that an administrative charge that included the language

9

"subjected to a pattern of continued retaliation while employed" allowed for a hostile work environment claim).

## II.     Age Discrimination under the ADEA

The ADEA prohibits employers from taking adverse employment actions against employees because of their age. 29 U.S.C. § 623(a). Under § 623(a), the plaintiff must prove by a preponderance of the evidence that plaintiff's age was the "but-for" cause of the adverse employment action. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177-78 (2009). The plaintiff may establish that age was the "but-for" cause of the adverse action by presenting either direct or indirect evidence. *Clark v. Matthews Intern. Corp.*, 628 F.3d 462, 469 (8th Cir. 2010); *Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007). "Direct evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision," sufficient to support a finding by a reasonable fact finder that an illegitimate criterion was the but for cause of the adverse employment action. *King v. United States*, 553 F.3d 1156, 1160 (8th Cir. 2009) (citation omitted); *see Gross*, 557 U.S. at 177-78. Indirect evidence allows the plaintiff to establish discrimination through inferences and circumstantial evidence under the guise of the *McDonnell Douglas* burden-shifting analysis. *Richmond v. Bd. of Regents Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992).

In Worden's response to Interbake's motion for summary judgment, Worden asserts that the "traditional *McDonnell Douglas* burden-shifting framework does not apply" and instead relies solely on direct evidence to

establish her age discrimination claim. Docket 35-1 at 10. Direct evidence includes actions or remarks of the employer that reflect a discriminatory attitude, comments that demonstrate a discriminatory animus in the decision-making process, or comments uttered by individuals closely involved in employment decisions that may impute a discriminatory attitude. *King*, 553 F.3d 1156, 1161 (8th Cir. 2009). Statements connected to the employee's age and the employee's job duty are examples of direct evidence. *See, e.g., E.E.O.C. v. Liberal R-II Sch. Dist.*, 314 F.3d 920, 924-25 (8th Cir. 2002) (finding direct evidence of discrimination when a supervisor told a bus driver that he "was too old to drive a bus"); *Kneibert v. Thomson Newspapers, Mich., Inc.*, 129 F.3d 444, 452 (8th Cir. 1997) (finding that a decisionmaker's statement to a terminated editor that he "had no use for a senior editor" and instead needed "three young editors" was direct evidence of ADEA discrimination). Direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993) (citation omitted). When "direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary." *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994).

     Viewing the facts in the light most favorable to Worden, she claims that her supervisor, Gaiani, became aware of her age in June of 2008. Docket 35-1 at 8. After learning of her age, Worden alleges that Gaiani made repeated

remarks relating to her age up until the point of her termination, including one specific instance in which Gaiani refused to listen to her work-related comments because she was old and her brain "needs a lot of rest." Docket 35-4 at 42. On another occasion, Worden was having difficulty with her emails and Gaiani told her that the difficulty stemmed from the fact that she was "old and forgetful." *Id.* at 51. The proximity of these remarks in relation to the date of her termination,[10] the frequency of the remarks, and the substance of the remarks are sufficient to establish a specific link between the discriminatory animus and Worden's termination. *C.f. King*, 553 F.3d at 1161 (implying that comments made shortly before the adverse action is taken can constitute direct evidence).

Because direct evidence exists, a jury may determine that the alleged discrimination was the "but for" cause of Worden's termination. *C.f. Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011) ("An issue of material fact exists if a reasonable jury could return a verdict for the party opposing the motion.") (citation omitted).

### III.  Age-Based Hostile Work Environment

To establish a hostile work environment claim, Worden must show that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment based on her age; (3) the harassment affected a term, condition, or

---

[10] Worden alleges that these specific remarks came in the months leading up to her termination. Additionally, she claims that Gaiani made repeated age-related remarks, the specifics of which are unknown to the court at this point, up until the point she was terminated.

privilege of her employment; (4) her employer (or immediate supervisor) knew or should have known of the harassment; and (5) the employer failed to take proper action. *Peterson v. Scott County*, 406 F.3d 515, 523-24 (8th Cir. 2005).

Worden belongs to a protected group under the ADEA because she was over the age of 40 when the alleged conduct took place. Additionally, Worden alleges that her supervisor was the individual creating the hostile work environment through his own harassment and hence element (4) is satisfied. Interbake has not argued that it took any action to remedy the alleged harassment. Thus, the only disputed issues are whether Worden was subjected to unwelcome harassment based on her age and whether such harassment affected a term, condition, or privilege of her employment.

For harassment to be actionable, the alleged conduct must be so extreme and severe that it changes the terms and conditions of employment and creates an abusive working environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1158 (8th Cir. 1999). The conduct must be both objectively and subjectively offensive. *Peterson*, 406 F.3d at 524. In determining whether alleged harassment creates a hostile work environment, this court may consider (i) the frequency of the offending conduct, (ii) its severity, (iii) whether it was physically threatening or humiliating, and (iv) whether it unreasonably interfered with work performance. *Hesse v. Avis Rent A Car System, Inc.*, 394 F.3d 624, 630 (8th Cir. 2005).

Worden alleges that Gaiani made age-related comments on a daily basis. Docket 35-4 at 60. These comments involved statements that Worden ought to retire, that she should be at home taking care of her husband, and that she was old and forgetful. *Id.* at 82, 85. Worden also claims that these daily barrages often took place in the presence of other employees. *Id.* at 41. Further, Worden alleges that she objected to the age-related comments several times directly to Gaiani, but such objections changed nothing. *Id.* at 60 (saying that Gaiani would laugh when Worden objected to his harassment). Worden also claims that she voiced concerns relating to Gaiani's harassment, and that she feared losing her job because of it, to Stegemann and Kumbalick some time between October 2008 and February 2009. *Id.* at 39, 59-60 ("I did tell [Mr. Kumbalick] I was scared for my job because of the treatment."). This evidence is sufficient to meet the remaining two elements. Based on the totality of the circumstances, the evidence in the record shows that the harassment directed at Worden rose to a level sufficient enough to support a hostile work environment claim. *See Hansen v. McLeod USA Publ'g Co.*, No. 03-4087-KES, 2006 WL 978705, at *4-*5 (D.S.D. 2006) (holding that daily age-related comments were enough to satisfy a hostile work environment claim).

"Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998). Viewing the evidence in the light most favorable to Worden, the court

finds that there are disputed issues of material fact as to Worden's ADEA hostile work environment claim for a jury to resolve.

## IV. Retaliation under ADEA and Title VII

Worden alleges that she was subjected to illegal retaliation under both the ADEA and Title VII. The analysis under each statute is the same: the *McDonnell Douglas* burden-shifting framework applies when no direct evidence is presented. *Jackson v. United Parcel Service, Inc.*, 548 F.3d 1137, 1142 (8th Cir. 2008) (applying *McDonnell Douglas* to a Title VII retaliation claim); *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 731 (8th Cir. 2002) (applying *McDonnell Douglas* to an ADEA retaliation claim). Under the *McDonnell Douglas* framework, Worden must first establish her prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1022 (8th Cir. 2011). If the prima facie case is established, then the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its action. If this is accomplished by the employer, the burden shifts back to the employee to put forth evidence of pretext. *Id.*

### A. Prima Facie Retaliation Case

Worden must first show that she engaged in a protected activity. *Pye*, 641 F.3d at 1022. Telling one's supervisor to stop discriminatory conduct is a basic form of protected activity. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th

Cir. 2000). Worden claims that on several occasions leading up to her termination she objected to discriminatory remarks made by her supervisor, Gaiani. Docket 35-4 at 60, 82-83. Furthermore, Worden alleges that she contacted Stegemann some time between October of 2008 and February of 2009 and complained of Gaiani's discrimination and harassment. *Id.* Such objections both to Gaiani himself and to a human resources employee constitute protected activity. *See Ogden*, 214 F.3d at 1007 (finding that an employee telling her supervisor to stop offensive conduct is enough to constitute protected activity).

Next, Worden must show that she suffered an adverse employment action. *Pye*, 641 F.3d at 1022. Interbake terminated Worden, establishing an adverse employment action.[11]

The last element Worden must show is a causal connection between her protected activity and the adverse employment action. *Pye*, 641 F.3d at 1022. "The timing of an adverse employment action in connection with the protected activity can sometimes establish causation for [the] purpose of establishing a prima facie case." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 915 (8th Cir. 2006). Interbake argues that the amount of time between Worden's protected activity and her termination was too great, alleging that at least a two-month interval exists. Docket 38 at 15. But there is evidence in the record that

---

[11] The parties disagree on whether Worden's placement in the PTP is an actionable adverse employment action. It is not necessary to determine whether the PTP constitutes an actionable adverse employment action for purposes of this motion.

suggests that Worden engaged in protected activity, i.e., objecting to discrimination on account of her age and her association with minorities, up until the day she was terminated. Docket 35-4 at 60, 82-83. Additionally, the evidence is unclear as to when Worden voiced concerns about discrimination and harassment to Stegemann. *Id.* (noting that the discussion took place some time between October of 2008 and February of 2009). The conversation with Stegemann may have taken place some time in February of 2009, the month (and perhaps days) leading up to Worden's termination. Viewing the evidence in the light most favorable to Worden, there is a temporal proximity between her objections and her termination strong enough to satisfy the third element of her age and racial association retaliation claims. *See Green*, 459 F.3d at 915 (noting that the Eighth Circuit has held that periods longer than three weeks can infer causation).

### B.     Interbake Articulates a Legitimate Reason for Termination

With Worden's prima facie case established, Interbake is required to articulate a legitimate, nonretaliatory reason for terminating Worden. *Pye*, 641 F.3d at 1022. Interbake claims that it terminated Worden because an internal investigation revealed that Worden violated company policy by altering a schedule and improperly contacting another employee. Docket 29 at 10. Interbake also notes that Worden's past performance history and her enlistment on the PTP were also considered in the decision to terminate her. *Id.* Therefore, Interbake has articulated a legitimate reason for terminating Worden.

## C.   Worden Offers Evidence of Pretext

The burden shifts back to Worden to offer evidence of pretext because Interbake articulated a legitimate reason for termination. *Pye*, 641 F.3d at 1022. "An employee can prove that her employer's articulated justification for an adverse employment action is pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones v. Nat'l American Univ.*, 608 F.3d 1039, 1046 (8th Cir. 2010) (citation omitted).

Worden relies most heavily on the indirect method by showing that Interbake's explanation of her termination is unworthy of credence. Worden argues that she did not violate a company policy because she did not alter a schedule or improperly contact an employee. Docket 35-4 at 86-88. Whether Worden was properly terminated depends largely on whether Wilch was scheduled to work at 11 a.m. on the day in question. Worden violated company policy if Wilch was scheduled, but if Wilch was not scheduled, then no violation occurred. Worden claims that Wilch was not scheduled while Interbake argues to the contrary. Although Interbake has produced evidence of statements from employees who purport to have seen Wilch's name on the schedule for the 11 a.m. shift, Interbake has failed to produce the actual schedule sheet in question or a copy thereof. Worden testified that Wilch was not scheduled at 11 a.m. and that her name did not appear on the schedule. As a result, the

question of whether Wilch's name appeared on the schedule sheet comes down to an issue of credibility. The Eighth Circuit has maintained that "[c]redibility determinations . . . are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict." *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) (citation omitted). Thus, there is a genuine issue of material fact as to whether Interbake's reason for terminating Worden is indeed true or was actually the result of retaliation.

**V.     Associational Discrimination**

Worden states in her brief that she has adequately pleaded an "associational discrimination" claim in her complaint. Docket 35 at 15. The references to Worden's associational discrimination in her complaint, however, relate only to the retaliation cause of action. *See* Docket 1 at 3-4. Even if Worden had properly pleaded a claim of associational discrimination in her complaint, the claim would not survive summary judgment because Worden did not exhaust her administrative remedies for such a claim. Worden only checked the boxes for "AGE" and "RETALIATION" as the basis for the discriminatory conduct in her EEOC Charge of Discrimination. And the description of defendant's behavior in the Rational Basis section in her Charge of Discrimination is solely related to the age discrimination and retaliation claims. Even Worden's Intake Form states that Worden believes "that [she] was discriminated against based upon [her] age and in retaliation for speaking out on behalf of minority employees in the plant." Docket 1 at 16. Because Worden

19

has not properly pleaded a claim for associational discrimination in her complaint or exhausted her administrative remedies for such a claim, the court finds that such a claim cannot survive defendant's motion for summary judgment.

## CONCLUSION

Interbake moved for summary judgment on Worden's claims of age discrimination, hostile work environment, associational discrimination, and retaliation. Worden raised genuine issues of material fact relating to her claims of age discrimination, hostile work environment, and retaliation. Worden failed to adequately plead her associational discrimination claim, and she also failed to exhaust her administrative remedies with respect to such claim. Thus, it is

ORDERED that defendant's motion for summary judgment is denied with respect to plaintiff's claims of age discrimination, hostile work environment, and retaliation.

IT IS FURTHER ORDERED that defendant's motion for summary judgment is granted with respect to plaintiff's Title VII associational discrimination claim.

Dated September 4, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE